ALBANY,
August, 1814.

STRONG AND HAVENS *against* THE NEW-YORK FIREMEN INSURANCE COMPANY.

STRONG
v.
FIREM. INS.Co.

THIS was an action on a policy of insurance on the cargo of the ship *Massasoit, Whitten* master, on a voyage from *Philadelphia* to *Lisbon,* on rice, flour, and peas.

The defendants gave a *relicta,* &c. for three thousand, four hundred and nine dollars, subject to the opinion of the court on the following case: The policy, bearing date the 29th of *October,* 1812, was for 30,000 dollars, which fully covered the property insured, at a premium of 4 1.2 per cent. The cargo consisted of 265 tierces of rice, 1,689 barrels of superfine flour, 500 barrels of rye flour, and 54 bags of peas. The invoice price of the cargo at *Philadelphia,* where it was purchased and shipped, was 28,935 dollars and 35 cents.

Where a general average is fairly settled in a foreign port, and the insured is obliged to pay his proportion of it there, he may recover the amount so paid by him from the insurer, though such general average may have been settled differently abroad, from what it would have been in the home port.

The vessel arrived in safety at *Lisbon,* where she was moored. Soon after, and while the principal part of the cargo was on board, a violent storm arose, on the 19th of *December,* 1812, and for the preservation of the cargo, as well as the vessel, it became necessary to cut away most of her rigging and spars, which damages were made the subject of *general average* at *Lisbon.*

At the time of the disaster, there had been safely delivered 377 barrels of superfine flour, and 385 barrels of rye flour, and the general average was stated on the residue of the cargo remaining on board at the time of the disaster, on 17 barrels of indian meal, the private adventure of the captain, also on board, and upon the vessel and one half of the freight, deducting the freight of 'that part of the cargo which had been delivered before the accident happened.

It was admitted that the adjustment of the general average at *Lisbon* was made fairly and *bona fide ;* and that as between the mediate parties thereto, it was correct.

After the accident happened, the captain refused to deliver to the supercargo the residue of the cargo remaining on board, until satisfactory security was given for the due payment of the proportion of the general average to be assessed on that part of the cargo, at *Lisbon.* Security was accordingly given, and as

soon as the average was adjusted and ascertained, the supercargo paid over to the captain the sum assessed as the proportion to be contributed to the general average, by the cargo on board.

The total value of the cargo on board, brought into the average at *Lisbon*, was estimated at 32,375 dollars. The *invoice* price of the same was 22,313 dollars and 49 cents. The value of the vessel was ascertained by a survey of her at *Lisbon*, after the damages occasioned by the accident had been repaired, deducting one third new for old, and was taken, accordingly, at 8,750 dollars. The *half* of the freight was estimated at 2,500 dollars, the total amount of freight on the whole cargo being 6,981 dollars and 33 cents. The rate of contribution, thus settled at *Lisbon*, was 10 dollars and 43 cents and 6 mills *per cent.*

[If the cargo had been valued at the invoice price, and the vessel and freight as at *Lisbon*, the rate of contribution would have been 13 dollars and 5 cents and 28 mills *per cent.*

If the general average had been adjusted here, taking the contributory values, according to the rule of this court laid down in *Leavenworth* v. *Delafield,* (1 *Caines' Rep.* 573.) that is, the invoice price of the cargo, 4-5ths of the vessel and half of the freight, the *rate* of contribution would have been 14 dollars, 2 cents and 71 mills per cent.]

The point in controversy was, whether the defendants were liable to pay the whole amount of the proportion of general average, assessed on the cargo, according to the adjustment at *Lisbon*, or only according to the rule adopted in *New-York*. The defendants insisted that they were not bound by the adjustment at *Lisbon ;* and were liable only for the proportion of general average to be settled according to the rule adopted here.

It was agreed that if the court should decide that the plaintiffs were entitled to recover the whole amount of the proportion of general average, as adjusted and paid at *Lisbon*, then judgment was to be entered for the damages, as in the *relicta,* &c. otherwise, the amount was to be reduced to such sum as the court should decide to be due to the plaintiffs; and either party was to be at liberty to turn the case into a special verdict.

*G. W. Strong,* for the plaintiffs.  1. The assured must, at all events, be liable for the proportion of general average assessed

ALBANY,
August, 1814.

STRONG
v.
FIREM. INS.Co.

on the cargo, valuing it at the invoice price, according to the case of *Leavenworth* v. *Delafield.*

By this valuation, the rate per cent. of loss must correspond with the difference between the valuations; for when a given sum is to be raised, by a contribution at a rate per cent. as the principal is diminished the per centage must be increased.

Confining the assessment to the cargo alone, it makes no difference which valuation is adopted.

It will be objected, that there is a difference where different subjects are brought into the estimate, because the same rate per cent. is to be applied to all the subjects. But this objection proceeds on the supposition, that a part of the assessment on the cargo ought to have been laid on the vessel and freight. Had the sacrifice been of the cargo, and not of the vessel, the plaintiffs, in the first instance, could call on the defendants to pay the whole loss.[*] And there is no difference, in this case, in principle, whether the loss happened to the cargo or vessel, for the cargo, by the *lien*, was equally implicated in the loss; and this loss comes directly within the clause in the policy authorizing the insured to sue, labour, &c.

[* *Maggrath* v. *Church*, 1 *Caines' Rep.* 196. *Watson* v. *Mar: Ins. Co.* 7 *Johns. Rep.* 57]

Again, it may be argued, that the rate per cent. of contribution, adjusted in *Lisbon*, is right, and the liability of the defendants is to be measured by that rate per cent. applied to the *invoice* price of the cargo. But as the rate per cent. must vary according to the amount of the valuation, it is preposterous to contend that the former is right and the latter wrong.

2. A general average, fairly adjusted and *compulsorily* paid, abroad, is binding on the insurers here, though it be not adjusted in exact conformity to the rules established here, where the contract of insurance was made.

The insurers are bound to indemnify the insured for all losses necessarily arising from the perils insured against by the policy. On this principle, the court, in *Mumford* v. the *Commercial Insurance Company*,[†] decided that the insurer was liable to pay an additional or increased freight, it being an expense necessarily incurred in consequence of the capture; and *Kent*, Ch. J. in delivering the opinion of the court, adopts the observation of *Pothier*, (*Trait. d'Ass.* n. 52.) as a just principle, that "although the loss which contribution causes to the assured, be a loss which he does not suffer in the goods insured, yet, as he suffers it *in relation to those goods*, and in consequence of the perils of the sea,

[† 5 *Johns. Rep.* 233.]

ALBANY,
August, 1814.

STRONG
v.
FIRM. INS CO.
*8 Johns. Rep.
237. 248.

the insurer ought to bear the loss and indemnify the insured." Should it be said, that the invoice price gives that indemnity, we answer, in the words of Chief Justice *Kent*, in the case of *Gracie* v. *The New-York Insurance Company ;* * " Nor is the assured, in this case, to be limited to the prime cost of the subject. That only is resorted to when it becomes necessary to ascertain the value of the subject insured, or, what is the same thing, the amount of the loss. It is a rule of computation which ceases, when the parties have fixed the value, or it can be ascertained, (as in this case,) by another and more obvious rule, viz. the sum *actually paid*. The latter is, in this case, the just and *certain* test of the amount of the loss, &c. I do not know of any decision or principle which forbids us to resort to it."

Again, suppose the goods had arrived at a falling market, and where they would not sell for the invoice price. The insurer, in that case, would not be liable to pay the invoice price. The rule, to be just, must be mutual. The sacrifice, which gives rise to a contribution, enures principally to the benefit of the insurer.

† *Park on Ins.*
565.

In *Walpole* v. *Ewer*,† Lord *Kenyon* said, that the insurers, in *England*, were liable to pay the amount of contribution settled and paid in *Denmark*, according to the law of that country, which was different from the law of *England*. And in *Newman*

‡ *Park,* 566.
*note.*

v. *Cazalet*,‡ where the insured had been compelled to pay a proportion of general average, settled at *Leghorn*, according to the sentence of the commercial court of *Pisa*, and which was more than he would have been obliged to pay, by the law of *England*, had the general average been adjusted there, it was held that the insured were entitled to recover the amount so paid by them, of the insurer. It is true, that in that case, there was proof, that such foreign settlements of averages had been frequently paid by insurers in *England ;* and Judge *Buller*, before whom the cause was tried, seems to place his decision upon

§ *Marshall on Ins.* 762, 763.
*notes.*
*Beawe's Lex Merc.* 349.

the proof of an established usage ; yet both *Park* and *Marshall*§ cite the cases of *Walpole* v. *Ewer*, and *Newman* v. *Cazalet*, with approbation.

‖ 3 *Johns. Cas.*
178.

I am aware of the case of *Lenox* v. *The United Insurance Company*.‖ The insurance in that case was on the cargo on *deck*, which was thrown overboard, and was put into general average at *Lisbon*. The point raised here, was not discussed in that case. There the payment of the contribution was vo-

ALBANY,
August, 1814.

STRONG
v
FIREM. INS. Co.

luntary. Here it was compulsory. The de ision in that case, also, turned on the ground of the *lex loci contractus*, which is said to be where the contract of insurance is made. But must not the parties have in view, also, the laws of the different places mentioned in the policy as the *iter* of the voyage, and of all other places into which the vessel may be forced to enter, by necessity, from the perils insured against ?

In *Schmidt* v. *The United Insurance Company*,* the jury, under the direction of the judge, found a verdict for the plaintiff for a total loss, and also for the amount of a general average, settled and paid at *Embden* ; and though the majority of the court rejected the item of general average, it was on the ground that the insured could not recover for a total loss, and a *general average*, at the same time; the sum paid for the general average not coming within the special clause, authorizing the insured to sue for, labour, &c.

Again, try the rule by that adopted in the adjustment of partial losses. There the rule is to take the difference between the sound and damaged articles at the port of delivery.†

3. A practice formerly prevailed in *England*, as to the mode of contribution, in case of general average, to take the invoice or prime cost, if the loss happened before half the voyage was performed; but if it happened afterwards, then to value the goods at the clear price which they would have fetched at the place of destination. But *Abbot* says, " the last valuation is now adopted in all cases where the average is adjusted after the ship's arrival at the place of destination, and appears best to agree with the nature of the subject."‡

So the ordinance of *Wisbuy*§ declares that the merchandise thrown overboard shall be valued in the average, at the price the rest was sold for, freight only being deducted. And the same rule is to be found in the laws of *Oleron*.|| In *Leavenworth* v. *Delafield*,** *Livingston*, J. observes that he cannot see much force in the reason assigned by *Abbot* for his rule; that if all the goods, those which arrive, as well as those which have been cast into the sea, were to be estimated at the foreign value, the result will be nearly the same, provided there be an equal advance in all, as if the first cost be resorted to as the standard of worth." That was a case of capture, and the adjustment was made in *New-York*.

In *Bell* v. *The Columbian Insurance Company*,†† it was decided,

* 1 *Johns. Rep.* 249.

†*Lewis & Rucker,*2 *Burr.*1187. *Johnst. & Sheddon,* 2 *East*, 581. *Hurry v. R. E. Ass. Co.* 3 *Bos. &Pull.* 308. *Lawrence v. N. Y. Ins. Co.* 3 *Johns. Cases*, 217.

‡ *Abbot on ships,* 347 *Par.* 3. ch. 8. s. 15. *Park*. 177. 2 *Magens*, 100. 285 339. *Molloy, B.* 2. ch. 6. s 15. *Malyne P.* 1.c. 26. p 113. § *Laws of Wisbuy, art* 39. || *Laws of Oleron, Art.* 8 **1 *Caines's*578.

††2 *Johns. Reg* 98.

ALBANY,
August, 1814.

STRONG
v.
FIR EM. INS. Co.
* Code de Com-
merce, Art. 402.

that where a vessel becomes so much injured by the perils of the sea, as to render it necessary to sell her in a foreign port, the rule laid down in *Leavenworth* v. *Delafield* does not apply; but her real value being ascertained by the sale, that should be taken, in calculating the general average. By the *Commercial Code* of France,* in relation to general average, it is declared, that " the price of goods is established by their value at the place of discharge."

† *Park on Ins.*
178
*Roccus de Assec.*
62.
*Marshall*, 546.
1 *Magens*, 69.

4. *Park*† lays down the principle from *Roccus*, that the insurers are liable to pay the assured for all expenses arising from general average, in proportion to the sums they have underwritten. " The opinion of this learned civilian," says *Park*, " is agreeable to the laws of all the trading powers on the continent of Europe, as well as those of *England*, where the insurer, by his contract, engages to indemnify against all losses arising from general average."

*Wells* and *S. Jones*, jun. contra. We do not question the principles laid down by the authorities cited by the counsel for the plaintiffs. It is the application of them to this case that is denied. The only question is, whether the insurers are to pay the whole amount according to the value at *Lisbon*, or according to the invoice price at *New-York?* The rule contended for by the plaintiffs, would involve the insurer in the fluctuation of the market, contrary to the very position laid down in all the authorities, and admitted by the plaintiffs' counsel.

We do not dispute the adjustment of the general average made at *Lisbon*; but we insist that we are bound to pay only in proportion to the sum we have insured, that is, the invoice price, and on which we have received a premium. If the goods had all been thrown overboard, the plaintiffs could have received the invoice price only; not what they would have sold for, had they arrived at *Lisbon*. We do not ask for a new adjustment of the average. We only say, that the rate per cent. of contribution must be on the invoice price of the goods, or prime cost; not on the cost and *profits* also. As between the parties at *Lisbon*, the owners of the different subjects, the market price, or value there, was the fair mode of estimation. But as between the insurer and insured, we contend that the rule is different. On what just principle can the insurers be

called on to pay not only a proportion of the general average, on the *cost* of the goods, which they have insured, but on the *profits* also, which they have not insured. The *profits* might have been separately insured by other underwriters; and where the insurance is *profits*, you may recover an *average*, as well as a total loss.* The plaintiffs in this case must be considered as in the place of the insurers on the *profits*, and must bear that proportion of loss. The underwriters on the goods have received no premium for an insurance of the profits.

ALBANY,
August, 1814.

STRONG
v.
FIREM. INS.CO.

* *Hodgson* v.
*Glover*, 6
*East*, 316.

This case does not come within the clause in the policy, authorizing the insured to sue for, labour, &c. Though the policy is valued, yet, in case of a partial loss, it is opened, and the invoice price, or prime cost, is resorted to as the value; that is, when the article insured is not specifically valued in the policy. By the rule for which we contend, justice is done to all parties. The insurers engage to indemnify, in case of loss. Now, what is lost? The invoice price or cost of the goods. If the insured are paid the cost, they lose nothing. The plaintiffs ask for more than an indemnity; they seek to recover *profits* also. But if the insurers, in case of a total loss, are not liable for profits, unless insured, *eo nomine*, why ought they to be liable for profits in case of a partial loss?

The distinction for which we contend, as to the rule between the owners of the different subjects, and that between the owner of one of those subjects and the insurers, is expressly recognised by *Abbott*,† in the paragraph referred to by the plaintiffs' counsel. He says, "as between the proprietor and insurer of goods, the prime cost is the only value, the contract of insurance in that case being a contract of indemnity against loss, and not a contract for the security of gain."

† *Abbott*, 347.

In the case of *Clark* v. *The United Fire and Marine Insurance Company of Portland*,‡ in the supreme court of the state of Massachusetts, the precise question raised here was discussed and decided according to the rule, and upon the same distinction for which we contend.

‡ 17 *Mass. Rep.* 365.

As to the observation, that the value of the goods at the port of delivery might be less than the invoice price, it may be answered, that the insurer must, nevertheless, pay according to the invoice price, for that is the contract.

*T. A. Emmet*, in reply. In *Europe*, the rule as to value is the value at the port of discharge. The rule laid down by this court, in the case of *Leavenworth* v. *Delafield*, is peculiar to this country. The counsel for the defendants take part of the rule at *Lisbon,* and part of the rule here. They ought to adopt the entire rule in one place or the other. If they acquiesce in the correctness of the valuation of the ship and freight at *Lisbon,* they ought not to object to the valuation of the cargo there. The general average is paid in consequence of a loss occasioned by the perils of the sea, and the insurers undertake to indemnify the insured to the amount of the sum insured, for all the insured are bound to pay in consequence of the perils insured against. On what other principle could this court, in *Gracie* v. *The New-York Insurance Company*, have decided that the insurers were bound to indemnify the plaintiff for the amount of the bond given on the appeal from the decree of the council of prizes, which he had been compelled to pay, though the subject was carried to its place of destination, and sold to a profit?

In the case of *Clark* v. *The United Marine and Fire Insurance Company*, the value of the vessel at *Dublin*, where the general average was adjusted, was greater than at *Kennebunk*, the place of departure. If the different subjects are increased in value in equal proportions, the rate per cent. must be precisely the same. The court in *Massachusetts* proceeded on a supposition totally inadmissible, that *profits* were included in the adjustment, as a distinct subject. They took the *English* rule as to adjusting general average, not the rule of this court, as laid down in *Leavenworth* v. *Delafield;* and yet, in face of the *English* rule, acted upon for more than 200 years, they decided on this new principle, as to *profits.* If this is to be sanctioned, then the insured, in all cases where there is a *profit*, must be bound to contribute to the amount of the *profits*, even to 100 per cent.

*Sewell*, J. who delivered the opinion of the court in *Massachusetts*, says, "Cargoes are shipped to foreign markets, in expectation of an additional value, to accrue to them on their arrival. When this reasonable expectation, operating in the course of trade, is fulfilled, the shipper has acquired a new property, which may, in fact, and ought to be, distinctly valued and estimated in a contribution calculated at the port of discharge." But I venture to say, that since the introduction of the law of insurance, not a *dictum* or a usage is to be found to justify the

assertion that *profits* are to contribute to general average.  If ALBANY,
*profits* are to contribute as a distinct and separate interest, why August, 1814.
                                                                    STRONG
                                                                       v.
                                                                    FIREM. INS.Co. not the *commission* of the supercargo, or *bottomry*, or *responden-*
*tia*, all of which are insurable interests?  Yet, whoever heard
of those interests being brought to contribute to general average?
When *Sewell*, J. observes that the question before him had not
been settled by any judicial decision, the answer is obvious.
The rule, that the value at the port of discharge was to be
taken, had been so clearly settled by usage, and acted upon for
200 years, that no judicial decision was necessary.  If a judi-
cial decision is required in every question of mercantile usage,
some of the clearest and most established rules of commercial
law may be brought into question.  It never was heard of
until the case in *Massachuletts*, that the value of the subject at
the *home* port was to be taken, in estimating an average loss.
This is a sufficient reason for disregarding that decision.  In the
settlement of a general average, the underwriters must always
be involved in the fluctuations of the market.  It is an excep-
tion to the general rule, an exception as clear and uniform as
the general rule itself.  The meaning of that rule is, that the
insurer is not to be involved in the speculations of the merchant,
so as to make a partial loss where none would otherwise have
existed, or so as to turn a partial into a total loss.

In the case of *Lenox* v. *The United Insurance Company*, the
court say nothing as to the valuation of the subjects at *Lisbon*,
but only decide that *goods on deck*, not embraced in the con-
tract of insurance, ought not to be brought into general average,
so as to charge the insurer.  That case, however, went on an
erroneous principle, for where, in the route of a voyage, a loss
is occasioned by the perils insured against, which is made a
general average, and settled, as it must be, in the foreign port,
(for the master can compel the adjustment,) the insured has a
right to call on the insurer to reimburse what he has thus been
obliged to pay.  The whole adjustment in the foreign port
must be taken, or none.  Another observation to be made on
that case is, that there the average was *voluntarily* settled and
paid.  Judge *Sewell*, in the case in *Massachusetts*, seems to re-
serve himself on the point where the payment of the general
average abroad has been compulsorily paid; though he appears to

ALBANY,    be inclined to the opinion that the sum thus necessarily and un-
August, 1814.   avoidably paid, might be recovered from the underwriter.

STRONG          If the underwriter can get rid of the foreign adjustment, he
v          must abide by the law of his own country; he cannot take half
FIREM. INS.Co.  of the rule abroad and half of the rule at home, as was done in
the case of *Clark* v. *The United Marine and Fire Insurance
Company.*

[The counsel here produced to the court a calculation to show
the erroneous principles on which the court in *Massachusetts* pro-
ceeded in the decision of that case.    By this it appeared that if
the different subjects had been valued at the prices at *Kennebunk*,
the proportion of general average on ship and cargo, the sub-
jects insured, would have been 1,044 dollars and 76 cents ; that
the general average settled at *Dublin* was 28 dollars and 7 cents
and 5 mills per cent., or 961 dollars, whereas the court decided
that the insurers were to pay only 575 dollars.]


VAN NESS, J. delivered the opinion of the court.    The single
question which arises in this case, viz. whether the assurers are
bound to refund the sum paid by the plaintiffs for general ave-
rage, according to the adjustment made at *Lisbon*, does not ap-
pear to have been settled by any decision of this court.    One
thing, however, is certain, that the underwriters must be held
liable, either for the amount thus paid, or according to the rule
laid down by this court in a case that will be presently noticed;
the rule contended for, in behalf of the defendants, being totally
inadmissible.    The first time, I believe, the effect of a foreign
adjustment came before the court, was in the case of *Lenox* v.
*The United Insurance Company.*    (3 *Johns. Cases*, 178.)    The
question there was, whether the plaintiff should recover a par-
tial loss only, or the amount paid on the adjustment of a general
average at *Lisbon ;* and it was decided that he should recover a
partial loss only,  on the ground that, according to our law, the
staves on the deck of the vessel, thrown overboard in a storm,
to lighten her, could not be brought into a general average.
What would have been the effect of this adjustment, if the jet-
tison had, according to the laws of this country, formed a proper
*item* in making it up, is left undetermined.

The next case is *Leavenworth* v. *Delafield*, (1 *Caines' Rep.*
573.) in which the adjustment took place at *New-York*, the port
of lading, upon the return of the ship.    The rule laid down in

that case does not, therefore, apply here, nor is it at all intended, by any thing now about to be decided, to question or impugn the authority of that decision. There is another case in which this point was touched by three of the judges, but nothing was decided. I mean *Schmidt* v. *The United Insurance Company.* (1 *Johns. Rep.* 249.) A general average had been settled at *Embden,* which was disregarded, one of the judges supposing it must already have been paid out of a fund belonging to the underwriters; by another, because the charges and expenses, brought into the account, were not covered by the policy, and, therefore, not recoverable against the assurers; and the third did not assign his reasons. We must, therefore, endeavour to ascertain what the rule is in that country from which we have derived most of this branch of our law. The usages and practice of *England,* before the revolution, as well in cases of this kind as in any others, are binding upon this court, as part of the common law; and it is only where the common law is silent, that we are at liberty to seek for other guides, or to establish a rule for ourselves.

In the researches which I have made, I have not been able to find a single case where a different rule has been adopted, as between the owners of the ship and cargo, and as between the assurer and assured. The general average once being made, and the amount of contribution between the owners of the ship, freight, and cargo ascertained, it appears, at least nothing appears to the contrary, that the underwriters have been held liable for such amount. In *Leavenworth* v. *Delafield,* Mr. Justice *Livingston,* who delivered the opinion of the court, after stating what would be just and proper, as between the owners, concludes by observing, " the same course of adjustment must be pursued between the underwriters." Indeed, it seems to me that this view of the subject would be conclusive to show that a *bona fide* adjustment and payment of a general average ought to be the measure of damages, as between the merchant and insured; otherwise, an insurance would cease to be what it has always been contemplated, a contract of indemnity. In this case " it is distinctly admitted, that, as it respects the owners of the cargo and the owners of the vessel, the average was correctly stated, and rightfully paid in *Lisbon.*" That this is a loss for which the assurers are liable, is not disputed, and there is no

principle more firmly established than that they are bound to return the money which the assured has been *obliged* to advance in consequence of any peril within the policy, provided it be fairly and honestly paid, and does not exceed the amount of the subscription. This was the doctrine of this court, in the case of *Gracie* v. *The New-York Insurance Company*, (8 *Johns. Rep.* 237.) where the effect and consequence of the cargo's arriving at a losing or falling market, as it respected the underwriters, is very fully discussed, and need not here be repeated. Many of the principles decided in that case apply with full force to the view I am now taking of the case under consideration. The sum paid by the plaintiff in that case was compulsory; it, in fact, amounted to a total loss; but having been paid to extricate the cargo from a situation in which it became placed by an act for which the underwriters were answerable, they were held bound to refund it. The payment in the present case was also compulsory. It was the master's duty, on his arrival at *Lisbon*, to settle the contribution, and to detain the cargo on board until it was paid; for the owners of the ship have a *lien* on the goods on board, not only for the freight, but also to answer all averages and contributions that may be due. (*Malyn's Lex Merc.* 113. *Molloy*, c. 6. s. 8. 15. *Marshall*, 544. *Abbott on Shipping*, 296.) The master, in this case, procured the average to be adjusted, and refused to deliver the cargo until the amount of the contribution charged upon it was paid or secured. What was the consignee to do in such a case? As between the owners, the sum demanded was just. The captain's right and duty to detain the cargo till it should be paid, was undisputed. The only proper course was pursued, and the underwriters are bound by their contract to make a complete indemnity.

I proceed to show that the settled usage and practice in *England*, for upwards of a century, has been in conformity with the principles I have stated. Adjudged cases, except of modern date, are not to be met with; the reason of which, no doubt, is, because the law and practice, in that country, have been generally considered as settled and established. *Marshall* (545, 546.) says, "the mode of ascertaining the amount of each person's contribution, is not very correctly defined in our laws; it is usually done upon the ship's *arrival at the port of*

*discharge*, by ascertaining the net value of the ship, freight, and cargo, as if nothing had been lost; these are to be valued at the price they would fetch at the *port of discharge*, and the net amount, after deducting all charges, is the sum which is subject to the contribution." In case of jettison, it was formerly the custom to value the goods at *prime cost*, if the loss happened before half of the voyage was performed; but if after, then at the price they would have borne at the port of delivery. This distinction is now exploded, and it has become the *settled practice* to estimate the goods lost, as well as those saved, at the price they would have fetched at the *port of discharge* on the ship's arrival there, freight being deducted. The opinion of *Abbott*, always deserving very great respect, is to the same effect. After alluding to the ancient custom just mentioned, he observes, " But here the last valuation (that is, the price the goods would have fetched at the port of destination) is adopted *in all cases* where the average is adjusted after the ship's arrival at the place of destination, and appears best to agree with the nature of the subjects." (*Abbott on Ships*, 292.) It is supposed that he confines the rule to the settlement of the contribution between the owners; and this is inferred from the following passage : " For, although, as between the merchant and the insurer, the prime cost is the only value, the contract of insurance being a contract of indemnity against loss, and not a contract of security of gain; yet, *in this case*, equity requires that the person," &c. Taking this in connexion with what precedes and follows it, the writer, I think, means to be understood thus: as a general rule between the merchant and the insurer, that prime cost is the only value; yet, in case of a jettison, where the average is adjusted at the port of discharge, the practice is otherwise. The first he lays down as the general rule, the last as the exception; and so Mr. Justice *Livingston* understood this passage, in *Leavenworth* v. *Delafield*. It is true, the elementary writers on this subject, in laying down the *English* rule, speak of an average arising from jettison, but there certainly is no ground for a distinction, whether it arise from that cause, or from a sacrifice of part of the ship, or her apparel or tackle, for the common benefit and safety. *Park* fully agrees with both these writers, and after giving the opinion of *Roccus* on this subject, who appears to hold the same doctrine, he observes, " The opinion of this learned civilian is

ALBANY,
August, 1814.

STRONG
v.
FIREM. INS. Co.

agreeable to the laws of all the trading powers on the continent of *Europe*, as well as those of *England*, where the insurer engages to indemnify against all losses arising from a general average." Here I cannot avoid again adverting to what I have before noticed, as affording the most satisfactory proof that the law and practice in *England* are such as I have supposed, namely, that it is the duty of the master to cause an adjustment to be made upon his arrival at the port of destination, and that he has a *lien* upon the cargo to enforce the payment of the contribution. (See, also, 2 *Mag.* 59, 60. 69. 173. *Molloy*, c. 6. s. 15. *Mar. Ordin. France*, tit. 8. s. 6. 21. *Laws of Oler.* art. 8. *Laws of Wisbuy*, art. 22. *Appendix to* 2 *Pet. Ad. Decis. Ordin. of Antwerp*, 2 *Magens*, 16. *Ordin. of Amsterdam*, *Ib.* 141. s. 35. *Ordin. of Konigsberg*, *Ib.* 207, 208. s. 37, 38. *Ordin. of Bilboa*, 405. s. 35.)

In conformity to what I have said, the two modern cases of *Newman* v. *Cazalet*, and *Walpole* v. *Ewer*, seem to have been decided. The former was a suit to recover from the underwriter the amount of a general average adjusted by the commercial court of *Pisa*, in which several items were charged, which, according to the *English* usage, would not have been allowed. It was proved by several brokers that in repeated instances they had adjusted averages under similar sentences in the court of *Pisa*, and the underwriters, though with reluctance, had always paid them. *Buller*, J. before whom the cause was tried, says, "that on the general law, the plaintiffs would fail, but in all matters of trade *usage* is a sacred thing. I do not like these foreign settlements of average, which make underwriters liable for more than the standard of *English* law." The cause was left to the jury upon the point of usage, and the plaintiff recovered. The usage here proved, I consider to be evidence that this was the usage of all *England*, and part of the common law of that country. Indeed, I know of no "standard of *English* law" contrary to it, unless the learned judge meant that when an adjustment of an average takes place, upon the return of the ship to an *English* port, immediately after a disaster, the prime cost is the value, because the price at the port of destination is in such case unknown. (*Abbott*, 293.) The other case was an action on a policy upon a *respondentia* bond on ship and goods. The ship was *Danish*, and an average loss was sustained upon the

goods, of 6*l*. 15*s. per cent.*, and the plaintiff, as the holder of a respondentia bond, was called on to contribute, and then brought his action against the *English* underwriters for the amount of that contribution. Lord *Kenyon* held the underwriters liable, notwithstanding that, by the laws of *England*, a lender upon *respondentia* is not liable to average losses. (*Park*, 565, 566.) In both these cases, the amount paid by the assured was the measure of damages against the underwriters. Whether the *English* law and usage are the best that can be devised, is not the question. We must take the rule as we find it, and leave any amelioration of which it may admit, to another department of the government. I cannot doubt, that at this day, the underwriters in *England* are uniformly held responsible for the amount fairly paid under a foreign adjustment of an average loss.

Judgment for the plaintiffs.